UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GARRET A. MCMILLAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:05cv388 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying plaintiff's application for Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §§ 1382, 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's borderline intellectual functioning is a "severe"

2

        impairment, based upon the requirements in the Regulations (20 CFR § 416.920.

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has the following residual functional capacity: medium work activity with simple, repetitive tasks on a sustained basis without extraordinary accommodations.

6. The claimant is unable to perform any of his past relevant work (20 CFR § 416.963).

7. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 416.963).

8. The claimant has a "high school (or high school equivalent) education" 20 CFR § 416.964.

9. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

10. Using Medical-Vocational Rule 203.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a dishwasher, 1270 jobs; hand packer, 700 jobs, dining room attendant, 1300 jobs and grounds worker, 1580 jobs.

12.[sic] The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(Tr. 15).

Based upon these findings, the ALJ determined that the plaintiff, Garret A. McMillan ("McMillan"), was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

McMillan filed his opening brief on February 27, 2006. On April 13, 2006, the defendant filed a memorandum in support of the Commissioner's decision. McMillan filed his

reply on April 17, 2006.  Upon full review of the record in this cause, this court is of the view that the ALJ's decision is supported by substantial evidence and must be affirmed.

A five step test has been established to determine whether a claimant is disabled.  See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

McMillan filed his SSI application on May 28, 2002.  McMillan's application was denied initially, upon reconsideration, and after a hearing before an ALJ.  On June 6, 2005, the ALJ issued a decision finding that McMillan was not disabled.  McMillan requested review of the ALJ's decision.  On September 7, 2005, the Appeals Council denied McMillan's request for review of the ALJ's decision and the ALJ's decision became the final decision of the Commissioner. McMillan then filed a civil suit for review of the ALJ's decision in this court on November 4, 2005.

McMillan was 21 years old when the ALJ issued a decision on June 6, 2005 (Tr. 10). McMillan completed high school in June 2002, earning a certificate from a "life skills" program (Tr. 64, 91). He applied for SSI four months later, in October 2002, alleging that he was disabled due to a mental handicap, attention deficit disorder and the inability to read or write (Tr. 58). He reported that he could not read beyond the second grade level (Tr. 81). McMillan said he had tried working part-time as a janitor and bagger in a grocery store, but got tired of the jobs and quit (Tr. 58-59).

In June 2003, McMillan's teacher, Jennie Bartlett, reported that while in high school he read at a first grade level and displayed math skills at a second grade level (Tr. 91). She indicated that McMillan had a good vocabulary, good verbal comprehension and could speak very well, but had problems with academics and reading (Tr. 93). He also participated in a community-based instruction program, in which he worked part-time doing cleaning and dishwashing at a hotel (Tr. 91). Ms. Bartlett reported that he did very well at this job, and that he did well in general when he took medication for attention deficit disorder (Tr. 91-92).

In February 2003, Daniel Hauschild, Psy.D., evaluated McMillan and administered an IQ test (Tr. 128–32). McMillan told Dr. Hauschild that he had worked as a janitor, but quit because he did not want to work anymore (Tr. 129). On testing, McMillan earned IQ scores ranging from 64 to 73, which placed him in the borderline to mildly mentally retarded range of intellectual functioning (Tr. 132). Dr. Hauschild indicated that McMillan's adaptive functioning was consistent with mild mental retardation (Tr. 132).

Two state agency psychologists reviewed the record evidence (Tr. 173-75, 177-80). Both psychologists indicated that McMillan had moderate limitations in terms of tasks involving

5

detailed instructions, but that he remained capable of doing simple, repetitive tasks on a sustained basis (Tr. 175, 180).

In July 2004, Ms. Bartlett indicated that, at the time he completed high school, McMillan read at the "pre-first grade" level, which meant he was best described as a non-reader (Tr. 195).

At the administrative hearing in June 2004, when asked how well he could read, McMillan responded, "not very good" (Tr. 255). He reported needing help reading job applications and said he did not write letters (Tr. 255-56). He testified that he had no physical problems and could lift at least 50 pounds (Tr. 259-60). McMillan indicated that he had tried working, but quit his job as a grocery store bagger because he just didn't want to work there anymore — and because he was caught shoplifting (Tr. 257). He quit another job because he thought it was too physically demanding (Tr. 256). McMillan explained that he was able to learn these jobs by being shown what to do (Tr. 261).

McMillan's father, Michael McMillan, also testified at the administrative hearing (Tr. 248, 274-79). Michael McMillan testified that his son read at a third-grade level (Tr. 277). Michael McMillan also testified that his son had worked with him doing janitorial work, and that he thought his son was capable of working as a janitor on his own (Tr. 277).

Vocational expert Leonard Fisher, Ph.D., testified at the administrative hearing (Tr. 248, 281-87). The ALJ asked Dr. Fisher to consider a hypothetical individual of McMillan's age, with no past work experience, and who had achieved a certificate from high school (Tr. 282). The individual had a verbal IQ of 73; performance IQ of 64 and a full scale IQ of 66 (Tr. 282). Further, the individual was capable of medium work exertionally, but could do only simple,

6

repetitive work[1] (Tr. 282). Dr. Fisher testified that such an individual could do a variety of unskilled work, including dishwasher, dining room attendant, hand packer, and grounds worker; approximately 4,800 such positions existed in the northeast Indiana region (Tr. 282-83). Dr. Fisher further testified that an individual with a second or third grade level in reading and math could perform the identified jobs (Tr. 284).

When asked whether his testimony was consistent with the Department of Labor's *Dictionary of Occupational Titles (DOT),* Dr. Fisher responded that it was (Tr. 285). Upon further questioning, Dr. Fisher noted that all jobs listed in the *DOT* had literacy standards, according to the *DOT*. He explained that job titles in the *DOT* included a general educational development criteria, and the lowest level (level one) reflected reading at better than a second or third grade level (Tr. 286). Dr. Fisher noted that these education standards were "according to the *DOT*," which was not saying there were no jobs that could be done with less reading skill (Tr. 286-87).

The ALJ followed the five-step sequential evaluation outlined in the regulations. The ALJ noted that McMillan had not performed substantial gainful activity since filing his application; that he had "severe" impairments; but that his impairments did not meet or medically equal the criteria of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P (Tr. 11-12, 15). The ALJ found that, despite his severe impairments, McMillan could do unskilled work involving simple, repetitive tasks, and was capable of at least medium exertion

---

[1] Specifically, the ALJ referred to the mental residual functional capacity outlined in exhibit 10F — which corresponds with Dr. Pressner's assessment that McMillan could do simple, repetitive work (Tr. 180).

7

(Tr. 13, 15). The ALJ then found that McMillan had no past relevant work (Tr. 13, 15), but that he could make a successful vocational adjustment to jobs existing in significant numbers in the regional economy given his age, education, work history and residual functional capacity (Tr. 14, 15). Accordingly, the ALJ determined that McMillan was not disabled within the meaning of the Social Security Act.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The agency has promulgated regulations that set forth a five-step sequential process for analyzing disability claims. 20 C.F.R. §§ 404.1520, 416.920. A claimant has the joint burdens of production and persuasion through at least step four, where the individual's residual functional capacity (RFC) is determined. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); 20 C.F.R. §§ 404.1545, 416.945. At step five the Commissioner bears the burden of proving that there are jobs in the national economy that the plaintiff can perform. Herron v. Shalala, 19 F.3d 329, 333 n.18 (7th Cir. 1994). In the present case, the ALJ found that McMillan retained the ability to perform her past relevant work.

The agency's final decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that the agency findings "as to any fact, if supported by substantial evidence, shall be conclusive." "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Furthermore, "[w]here conflicting evidence allows reasonable minds to differ as to whether a

8

claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or on the [Commissioner's] designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)(citations omitted).  This court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

In his decision, the ALJ found that McMillan had not engaged in substantial gainful activity since his alleged onset of disability.  At step two, the ALJ determined that McMillan had a severe impairment, but found, at step three, that he did not have an impairment or combination of impairments that met or equaled any impairment in the Listing of Impairments.  At step four, the ALJ determined that McMillan did not retain the residual functional capacity to perform his past relevant work.  However, at step five, the ALJ determined that other work existed in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors. The ALJ also determined that McMillan's allegations were not totally credible.

The defendant claims that substantial evidence supports the ALJ's finding that McMillan was not disabled because he was capable of performing work in the national economy. However, McMillan contends that vocational expert's testimony does not support the ALJ's non-disability finding. Specifically, McMillan contends that Dr. Fisher testified the identified jobs (dishwasher, dining room attendant, hand packer and grounds worker) "required" at least a second or third grade reading level, and that McMillan read below the first grade level and was described as a "non-reader." Pl.'s br. at 5.

The defendant claims that, in actuality, Dr. Fisher testified that the identified jobs could

9

be performed by someone with a second or third grade level in reading and math — but not that the identified jobs *required* this level of reading skill (Tr. 284). And while Dr. Fisher noted that every job title listed in the *DOT* had literacy standards above the second or third grade level, he also indicated that this was "according to the *DOT*," which did not mean there were no jobs that could be done with less educational development (Tr. 286-87). *Cf. Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) (recognizing tension between *DOT* literacy standards and the real world where illiterate individuals are clearly working).

The defendant further asserts that the ALJ's hypothetical question and other record evidence contained sufficient information to inform Dr. Fisher of McMillan's low reading ability.[2] The ALJ's hypothetical question advised Dr. Fisher that the individual had IQ scores ranging from 64 to 73 and had earned a certificate in high school from a special education program (Tr. 282). Further, Dr. Fisher was present during McMillan's testimony, during which he said he was not a good reader and described needing help reading job applications (Tr. 255-56). Given this information, Dr. Fisher was sufficiently advised of reading difficulties and could factor that difficulty into his testimony regarding available jobs. *Cf. Ragsdale v. Shalala*, 53 F.3d 816, 818-21 (7th Cir. 1995) (any deficiency in hypothetical question was cured where vocational expert was aware of omitted information). Clearly, the defendant is correct that the ALJ's findings and the jobs identified by the vocational expert adequately accommodated McMillan's

---

[2] The record contained somewhat conflicting evidence regarding McMillan's reading ability. He alleged he could not read or write when he applied for SSI (Tr. 58), and Ms. Bartlett initially indicated he read at a first grade level (Tr. 91). Michael McMillan testified that his son read at a third-grade level (Tr. 277). After the administrative hearing, Ms. Bartlett reported that McMillan read at the "pre-first grade" level, meaning he was a non-reader (Tr. 195).

reading difficulty.

In any event, despite any ambiguity in the vocational evidence, the ALJ's decision should still be affirmed because the ALJ was not required to cite vocational testimony in support of his step-five finding. Even if it is assumed that McMillan is illiterate, his RFC did not substantially reduce the range of medium work[3] he could perform and the medical-vocational guidelines supported a finding of not disabled.

The medical-vocational guidelines provide guidance for evaluating whether an individual can perform "other work" existing in significant numbers in the economy. If a claimant's age, education, work experience, and RFC coincide exactly with the corresponding factors of one of the rules of the Medical-Vocational Guidelines, the rule will direct a finding of disabled or not disabled. 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00; 20 C.F.R. § 416.969. Where the claimant's RFC does not exactly match the exertional definitions used in the Medical-Vocational Guidelines, the guidelines still provide a framework for deciding whether a significant number of jobs exist that a person so limited could perform. 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(d)-(e); *see also Edwards v. Sullivan*, 985 F.2d 334, 339 (7th Cir. 1993). If a claimant's RFC limitations "substantially reduce" the range of work the claimant can perform at a given exertional level, the ALJ should consult a vocational expert to carry the Commissioner's burden of producing vocational evidence of jobs the claimant can perform. *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). But "a vocational expert is not a required or even essential part of a disability benefits hearing . . . [w]hile the specialized knowledge of a vocational expert might

---

[3] The ALJ found that McMillan had no physical impairments and no exertional limitations, and could therefore do "at least" medium work exertionally (Tr. 13).

11

prove helpful in certain cases . . . we only require that there be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992).

In the present case, the ALJ observed that, given McMillan's exertional capacity for "at least" medium work, and considering his age, education and work experience, the medical-vocational guidelines would direct a conclusion of "not disabled" (Tr. 14). *See* 20 C.F.R. § 416.969; 20 C.F.R. Pt. 404, Subpt. P, App. 2, rule 203.28. The ALJ referred to a rule assuming a high school education (rule 203.28). But the same "not disabled" conclusion is directed by the rule that applies to a younger individual who is illiterate (rule 203.25). The ALJ also noted that McMillan had an additional non-exertional limitation, in that he was limited to simple, repetitive work (Tr. 14). And in determining what effect this non-exertional limitation had on McMillan's ability to perform medium work, the ALJ turned to the vocational expert's testimony (Tr. 14). Yet the vocational expert's testimony was not a prerequisite to the ALJ's non-disability finding, because McMillan's non-exertional limitation did not "substantially reduce" the range of medium work he could perform.

The Medical-Vocational rules are predicated on the existence of unskilled work in the economy. Unskilled work, by definition, requires little judgment to do simple tasks that can be learned on the job in a short period of time. 20 C.F.R. § 416.968(a); *see also* Social Security Ruling 85-15 (basic mental demands of unskilled work include ability to understand, carry out and remember simple instructions; respond appropriately to supervision and coworkers; and deal with changes in a routine work setting). Because unskilled work is by definition simple,

McMillan's non-exertional limitation (simple repetitive work) did not substantially reduce the range of unskilled work he could perform. And vocational expert testimony is not required where it is clear that a claimant's non-exertional limitation does not significantly diminish the claimant's ability to perform work at a certain exertional level. *See Ehrhart*, 969 F.2d at 540; Social Security Ruling 83-14 ("[w]here it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in [the medical-vocational guidelines] would not be affected"). In McMillan's case, rule 203.25 of the medical-vocational guidelines indicates that he could make a successful vocational adjustment to a significant number of medium jobs even if he were illiterate, given his age, education, work experience and RFC. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, rule 203.25. Courts have recognized that remand "in quest of a perfect opinion" is not necessary unless the remand might lead to a different result. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Thus, even assuming McMillan is illiterate, remand is not required because the ALJ did not need vocational testimony in the first place. *Cf. Shramek v. Apfel*, 226 F.3d 809, 814-15 (7th Cir. 2000) (affirming ALJ's decision despite errors because "[n]one of those errors . . . ultimately impacted the outcome"); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (affirming ALJ's ultimate non-disability finding, even if ALJ's finding that claimant could perform light work may not have been supported, where claimant's ability to do sedentary work was supported by substantial evidence and vocational expert identified significant number of sedentary jobs). Given the ALJ's RFC finding, the medical-vocational guidelines support a finding of not disabled. Accordingly, the Commissioner's decision will be affirmed.

## Conclusion

13

Based on the foregoing, the ALJ's June 6, 2005 decision is hereby AFFIRMED.

Entered: May 5, 2006.

                                            s/ William C. Lee
                                            William C. Lee, Judge
                                            United States District Court